762 So.2d 253 (2000)
STATE of Louisiana
v.
Dana A. JACKSON.
No. 99-KA-1368.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 2000.
*254 Gwendolyn K. Brown, Baton Rouge, Louisiana, Attorney for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, James F. Scott, III, Assistant District Attorneys, Gretna, Louisiana, for State.
Panel composed of Judges CHARLES GRISBAUM, Jr., THOMAS F. DALEY and SUSAN M. CHEHARDY.
*255 DALEY, Judge.
The defendant has appealed his conviction and sentence for distribution of heroin. For the following reasons, we affirm.

FACTS:
At trial, Agent Jeff Hegler, a narcotics officer with the Jefferson Parish Sheriff's Office, testified he received information from a confidential informant that a white male was selling heroin from Room 229 of the Pinnacle Motel. Agent Hegler passed the information on to Agent Anthony Synigal.
Agent Synigal testified that he called the pager number provided by the informant. When the page was returned, he told the man who responded that he wanted to buy five bags of heroin for one hundred dollars ($100.00). Agent Synigal arranged to meet the man at the Pinnacle Motel. The telephone conversation was tape recorded, and the recording was played for the jury. A transcript of the recording was admitted as evidence at trial. Agent Synigal testified that defendant was the person whose voice he heard over the telephone.
Agent Synigal conferred with his supervisor, Sergeant Bruce Harrison, who gave Synigal six $20.00 dollar bills and one $5.00 dollar bill with which to make an undercover heroin purchase. The bills were photocopied for future identification.
Agent Synigal testified that when he arrived at the motel room, he asked defendant, "You Dana?" Defendant responded, "Yeah." The two entered the motel room, and defendant went into the bathroom alone and closed the door. He returned with five small packets of aluminum foil containing an off-white powder. Defendant gave Agent Synigal the packets and Agent Synigal in turn gave defendant $100.00 dollars of the money supplied by Harrison. Agent Synigal testified that a second man and a woman were in the room, but that they did not participate in the transaction. Upon receiving the packets, Agent Synigal left the room. The material in the foil packets purchased by Agent Synigal tested positive for heroin.
Agent Robert Gerdes testified that he set up visual surveillance of the suspect's motel room. He was situated twenty-five to thirty yards away from Room 229 of the Pinnacle Motel. He saw a white male, later identified as defendant, Dana Jackson, open the door to the room and stand in the doorway. Shortly thereafter, he saw Agent Synigal enter the room with defendant and close the door. Agent Synigal left the room two to three minutes later. Agent Gerdes continued to watch the room. After Agent Synigal left, he did not see anyone enter or leave.
The drug transaction was also recorded, and the tape was played for the jury at trial. There is a lot of distortion on the tape, caused by the sound of Agent Synigal's clothes rubbing on the hidden microphone and the sound of the television in the room, making much of what was said unintelligible. A transcription of the tape was admitted into evidence.
Officers then obtained a search warrant for defendant's motel room. Later that evening, Synigal, Hegler and Harrison arrived at the room to execute the search warrant. The defendant and his two companions were in the room. A small bag of marijuana and $150.00 dollars in cash were found in plain view on a bedside table. In a search incident to his arrest, the officers recovered an additional $155.00 dollars from defendant's person. The money taken from defendant matched the photocopy of the money Agent Synigal used in the undercover buy.
With the aid of a police K-9 dog, the officers found five foil packets inside the acoustic tiles in the bathroom ceiling. The packets were contained in a green cap that appeared to be the lid from a can. These packets tested positive for the presence of heroin. Three pagers and two cellular telephones were also recovered in the search.
*256 The defense did not present a case. At the conclusion of trial, the jury found the defendant guilty of distribution of heroin. After being sentenced to life imprisonment at hard labor, he timely filed this appeal.

DISCUSSION:
In his first Assignment of Error, the defendant contends the trial court erred in denying his Motion to Suppress. Prior to trial, a hearing was held on the defendant's Motion to Suppress. The defendant contends the evidence adduced at the hearing on the motion established that the intrusion occasioned by the controlled buy was based solely on an anonymous tip supplied by a confidential informant whose veracity and basis of knowledge had not been determined or even explored by the investigating officers. He argues the uncorroborated anonymous tip did not provide officers with reasonable suspicion to justify the subsequent controlled buy. He suggests that narcotics agents should have sought to corroborate the informant's tip in a less invasive manner, i.e., by surveillance alone. Defendant further argues that the trial court erred in failing to suppress the evidence seized in the search of the motel room, because it was tainted by the tip received from an undisclosed confidential informant and was thus "fruit of the poisonous tree."
The Fourth Amendment to the United States Constitution and Article I § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. The State Constitution guarantees a right of privacy. State v. Church, 538 So.2d 993 (La.1989). However, LSA-Const. Art. I, § 5 prohibits only unreasonable invasions of privacy. In ascertaining whether individuals have a reasonable expectation of privacy that is constitutionally protected, a court must determine not only whether the individual has an actual or subjective expectation of privacy, but whether that expectation is also of a type which society at large is prepared to recognize as being reasonable. State v. Taylor, 30,531 (La. App. 2 Cir. 5/13/98), 714 So.2d 143. No legal authority exists to support a claim that privacy rights extend to a controlled drug buy, where the defendant consents to sell narcotics to an undercover police officer. In the instant case, defendant willingly admitted Agent Synigal to his motel room and made an independent decision to sell the officer heroin.
Agent Synigal testified both at the motion hearing and at trial that fellow narcotics agent, Jeff Hegler, received information from a confidential informant that someone was selling heroin from Room 229 of the Pinnacle Motel. Agent Synigal testified that he dialed the pager number given to Agent Hegler by the confidential informant. The defendant called back at the number Agent Synigal entered when he paged the defendant. Agent Synigal testified that he told the defendant he was "friend of Rickie," and he wanted to purchase five bags of heroin for $100.00 dollars. The defendant agreed and Agent Synigal went to the hotel room to purchase the heroin. The defendant welcomed the officer into his motel room, and willingly sold him heroin. The audio tape of the telephone conversation between Synigal and defendant shows that defendant invited the officer to meet him in order to engage in a transaction. Agent Synigal testified that he purchased five foil packets from the defendant and these packets tested positive for heroin. There was no search or seizure involved in the undercover buy, and thus no invasion of defendant's right of privacy. Further, there is no legal authority to support the defendant's contention that a telephone call by an under cover agent to a beeper number, which results in a returned phone call by the defendant, is an intrusion into the defendant's right to privacy.
Contrary to defendant's claim, the confidential informant's tip did not taint the search of the motel room. The tip was not used as a basis for probable cause for the search warrant. Agent Synigal's controlled buy from defendant, and the field *257 test showing the substance purchased was heroin, supplied the basis for probable cause. One controlled buy of illegal drugs from an officer is sufficient to supply probable cause to secure a search warrant. State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396. The defendant's argument that the heroin seized in the room search was fruit of the poisonous tree is without merit.
In his second Assignment of Error, the defendant contends the trial court erred in denying his Motion for Mistrial when the State introduced improper "other crimes" evidence. The "other crimes" evidence to which the defendant is referring is the marijuana seized at the time of defendant's arrest.
The first reference to marijuana came from Daniel Waguespack, the State's first witness at trial. Mr. Waguespack testified that he had examined a packet of green vegetative material seized at the time the search warrant was executed, and that the sample tested positive for marijuana. Defense counsel then moved for a mistrial, arguing that the marijuana had nothing to do with the heroin charge, and that its introduction had prejudiced defendant. The motion was denied. Agent Synigal and Sargent Harrison subsequently testified that the marijuana was seized from a bedside table during the execution of the search warrant. At the conclusion of the State's case, the prosecutor offered the marijuana for admission into evidence. The court allowed it to be admitted, over defendant's objection.
LSA-C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; ...
Generally, evidence of other crimes is inadmissible at trial because of the substantial risk of grave prejudice to the defendant. While the Louisiana Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404 B(1). Formerly known as "res gestae," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Curtis, 99-45 (La.App. 5 Cir. 7/27/99), 739 So.2d 931.
The marijuana at issue was seized simultaneously with the heroin during the execution of the search warrant. Contrary to defendant's argument, the seizure of the marijuana was an integral part of the officers' investigation, and its admission as part of the evidence seized pursuant to the search warrant was proper. The trial court did not err in denying defendant's Motion for a Mistrial.
The defendant next argues the trial court imposed an excessive sentence, and further that he was denied effective assistance of counsel because his trial counsel failed to file a Motion to Reconsider Sentence.
This court has routinely reviewed sentences for constitutional excessiveness despite a defendant's failure to file a timely Motion to Reconsider Sentence. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95. Thus, the defendant was not prejudiced by his attorney's failure to file a timely Motion to Reconsider Sentence, and his claim of ineffective assistance of counsel is without merit.
The defendant received the mandatory life sentence for conviction of distribution of heroin. The defendant argues *258 that the life sentence is disproportionate to this crime, as the distribution of heroin is not a violent offense. He further argues that the court should have considered that he is only twenty-one years old.
It is well established that the legislature has a unique responsibility to define criminal conduct and to provide for the penalties to be imposed against persons engaged in such conduct. The penalties provided by the legislature reflect the degree to which the criminal conduct affronts society. Courts must apply these penalties unless they are found to be unconstitutional. State v. Baxley, 94-2982, p. 8 (La.5/22/95), 656 So.2d 973, 979. With an eye to these principles, this court has found that a life sentence for distribution of heroin is not constitutionally excessive. State v. Williams, 97-970 (La.App. 5 Cir. 1/27/98), 708 So.2d 1086. Thus, we find the defendant's sentence is not excessive.
In our review for errors patent, we note that during sentencing, the trial judge told the defendant he had a three year time period in which to seek post-conviction relief. This advisal was incomplete, as at the time of the sentencing, LSA-C.Cr.P. art. 930.8 provided that a defendant has three years from the day the judgment becomes final in which to file an Application for Post Conviction Relief. An amendment to article 930.8, which became effective on August 15, 1999, shortens that prescriptive period to two years. See 1999 La. Acts 1262.
The application of the amended prescriptive period in defendant's case would not violate ex post facto prohibitions, as the article itself does not relate to an offense or its punishment. See State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197 (La.9/5/95), 660 So.2d 1189, 1201. Therefore, we hereby order the District Court to send written notice of the amended prescriptive period (along with an advisal of when the period begins to run) to defendant within ten days of the rendering of this opinion, then to file written proof in the record that defendant received said notice. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
CONVICTION AND SENTENCE AFFIRMED.