788 So.2d 647 (2001)
STATE of Louisiana
v.
Augustus J. BERKELEY.
No. 00-KA-1900.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2001.
*649 Robert F. Fleming, Jr., Jerry Fontenot, Metairie, LA, Kevin V. Boshea, James A. Williams, Davidson S. Ehle, III, Michelle H. Hesni, Gretna, LA, Attorneys for Defendant/Appellant, Augustus J. Berkeley.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry M. Boudreaux, Appellate Counsel, Assistant District Attorneys, Spiro G. Latsis, Donald A. Rowan, Jr., Trial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee, The State of Louisiana.
Panel composed of JAMES L. CANNELLA, SUSAN M. CHEHARDY and JAMES C. GULOTTA, pro tempore.
CHEHARDY, Judge.

STATEMENT OF THE CASE
On June 3, 1998, the Jefferson Parish District Attorney filed a bill of information charging defendant, Augustus J. Berkeley, with first degree negligent injuring of Marie Mansfield, a violation of La. R.S. 14:39.2. Defendant was arraigned on November 23, 1998, and pled not guilty. On June 15 and 16, 1999, the case was tried before a six-person jury, which unanimously found defendant guilty as charged. Defendant was sentenced on October 19, 1999 to imprisonment at hard labor for five years, with the sentence suspended, and defendant was placed on active probation for five years.[1] This appeal ensued.

*650 FACTS

Deputy Scott DeJong of the Jefferson Parish Sheriff's Office testified that on March 1, 1998, he responded to a call regarding a severe accident with injury at the intersection of Veterans Boulevard and Martin Behrman Street in Metairie. When DeJong arrived at the scene, he observed defendant behind the wheel of a black compact pickup truck facing west in the middle lane of Veterans Boulevard. DeJong observed a Toyota Camry on the median. The female behind the wheel of the Camry was unconscious and had to be extricated from her vehicle with the "jaws of life."[2]
DeJong testified that at the scene of the accident, defendant was uncooperative, had slurred speech and smelled of alcoholic beverages. Defendant was not confused, incoherent or unaware of what happened, but he was reluctant to answer any questions. DeJong gave defendant the alphabet test at the scene, which defendant failed.[3] DeJong could not give defendant any other field sobriety tests because those required a person to be able to stand. Defendant fractured his ankle in the accident and could not stand on two feet. DeJong also interviewed the passenger in defendant's car. DeJong also smelled a strong odor of alcoholic beverage on him and noticed that his speech was also slurred.
After investigating the accident scene, DeJong went to the hospital. He testified that he again saw defendant, and that he still smelled alcohol on defendant at the hospital. DeJong stated that his work involves dealing with "drunks" on a nightly basis, and that he is familiar with people who have been drinking alcohol. DeJong was joined at the hospital by a Louisiana State Trooper, Alexis Sovinsky. They both advised defendant that he was under investigation and that they had reason to believe that he had been drinking. Sovinsky read defendant his rights from a Miranda[4] form. Defendant refused several times to give a blood sample before he was sedated.
Marie-Therese Mansfield, who was seventeen years old at the time of the accident, testified that on March 1, 1998, she was at choir practice at Brother Martin High School. After practice, she brought a fellow choir member home and headed towards the Wendy's located near the Orleans/Jefferson Parish line to get something to eat. Ms. Mansfield has no recollection of the accident.
Ms. Mansfield testified that as a result of the accident, she sustained a concussion, several facial lacerations, cuts on her forehead, a torn liver, a bruised bladder, several pelvic fractures, one of which required surgery, and many bruises all over her *651 body. She stated that she has no feeling on her left calf, nor in the incision in her pelvic region. Ms. Mansfield further testified that she has a permanent plate and two screws inserted into her left hip. She testified that she has recurring pain because of her injuries, for which she takes medication. She was in the hospital for three weeks after the accident. After she left the hospital, she was on crutches for eight weeks. Ms. Mansfield also testified that her gynecologist told her that she would never be able to deliver a child naturally because of the injuries to her pelvis. Her medical records were admitted into evidence at trial.
Trooper Alexis Sovinsky of the Louisiana State Police also testified, and his testimony largely corroborated that of Deputy DeJong. Sovinsky arrived at the hospital to assist DeJong with the investigation. Sovinsky stated that he detected an odor of alcoholic beverage on defendant as he spoke to him at the hospital. He said that he could not give defendant a field sobriety test which detected movement in the eye because defendant was lying down, which would give a false reading. Sovinsky asked defendant if he would voluntarily submit to having blood drawn, and he refused. He read defendant his Miranda rights, as well as his rights relating to the chemical test for intoxication. Sovinsky further testified that defendant's eyes were bloodshot and his speech was slurred.

DISCUSSION
On appeal, defendant first argues that the evidence was legally insufficient to prove that he committed first degree vehicular negligent injury. He argues specifically that the state failed to prove beyond a reasonable doubt that he was under the influence of alcohol at the time of the accident.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Court held that due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original).
In the instant case, defendant was convicted of first degree vehicular negligent injuring, a violation of La. R.S. 14:39.2, which provides in pertinent part:
A. First degree vehicular negligent injuring is the inflicting of serious bodily injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance whenever any of the following conditions exists:
(1) The offender is under the influence of alcoholic beverages.
(2) The offender's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
(3) The offender is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964, or any abused substance.
B. The violation of a statute or ordinance shall be considered only as presumptive evidence of negligence as set forth in Subsection A.
C. For purposes of this Section, "serious bodily injury" means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss *652 or impairment of the function of a bodily member or organ or a mental faculty, or a substantial risk of death.
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Ultimately, evidence both direct and circumstantial must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La. 1983); State v. Worachek, 98-2556 (La. App. 1 Cir.11/5/99), 743 So.2d 1269. What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Some behavioral manifestations, independent of any scientific tests, are sufficient to support a charge of driving while intoxicated. State v. Pitre, 532 So.2d 424 (La.App. 1 Cir.1988), writ denied, 538 So.2d 590 (La.1989); State v. Holley, 32,156 (La.App. 2 Cir.8/18/99), 742 So.2d 636. The observations of an arresting officer may be sufficient to establish guilt. State v. Allen, 440 So.2d 1330 (La.1983).
In the instant case, the state and the defense presented two different versions of the facts. Deputy Scott DeJong testified that at the scene of the accident, defendant was coherent but uncooperative, had slurred speech, and smelled of alcoholic beverages. DeJong gave defendant a field sobriety test, which he failed. Trooper Alexis Sovinsky testified that he detected an odor of alcoholic beverages on defendant when he spoke to him at the hospital. Sovinsky also stated that defendant's eyes were bloodshot and his speech was slurred. DeJong and Sovinsky both stated that they could not perform many of the field sobriety tests because defendant had a fractured ankle and could not stand up. However, based on their experience and observations, they both believed that defendant was under the influence of alcoholic beverages at the time of the accident.
Steve Lewis, a friend of defendant's, testified that at 4:30 p.m. on the day of the accident, defendant met him and a group of people at Jaeger's Restaurant. Lewis stated that he believed that defendant only drank one screwdriver at Jaeger's prior to the accident. Lewis claimed that defendant was not intoxicated, his speech was not slurred, his eyes were not bloodshot, and he did not have a strong odor of alcohol on him when he left Jaeger's.
Defendant also testified at trial that he had only one screwdriver at Jaeger's on the day of the accident. Defendant testified that he was not intoxicated at the time of the accident, and that he was incoherent and had slurred speech after the accident because of his injuries. However, defendant admitted that he was not being attentive and could not stop his vehicle in time once he saw the red light, thus causing the accident.
After hearing the testimony and evaluating the credibility of the witnesses, the jury found defendant guilty of first degree vehicular negligent injuring. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir.4/29/97), 694 So.2d 1052.
*653 In order to obtain a conviction for first degree vehicular negligent injuring, the state must prove that defendant was driving a vehicle which caused serious injury to someone, and that defendant was under the influence of alcohol at the time of the accident. Defendant admitted that he was driving the vehicle, ran the red light, and did not dispute that the victim sustained serious injuries. Therefore, the only issue is whether defendant was under the influence of alcohol at the time of the accident. Upon review, we find that any rational trier of fact, accepting Deputy DeJong and Trooper Sovinsky as credible witnesses, could have found that defendant was under the influence of alcohol at the time of the accident. Accordingly, we find that the evidence at trial was sufficient under the Jackson standard to support defendant's conviction.
Defendant also argues on appeal that, during the trial, the prosecution improperly referred to defendant's post-Miranda refusal to participate in any chemical testing or to answer the investigators' questions; that the prosecution improperly prompted the identification of defendant by Trooper Sovinsky; and that the prosecution offered prejudicial testimony from the victim as to her injuries and long term suffering.
Upon review, we note that there were no contemporaneous objections lodged on any of these grounds during trial, as required by La.C.Cr.P. art. 841, which provides, in pertinent part: "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."
The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Styles, 96-897 (La.App. 5 Cir.3/25/97), 692 So.2d 1222, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609. As such, defendant is precluded from raising these issues on appeal.
Defendant also argues on appeal that the trial court erred by allowing the state to introduce hearsay testimony from a police report. During the cross-examination of defendant, the state attempted to impeach defendant's testimony by reading into the record statements contained in a police report allegedly made by Eric Gates to a police officer on the scene. Gates did not testify at trial. Over defense counsel's objection, the state was allowed to have defendant read a sentence from the police report in which the officer had written that Gates told him "they [including defendant] were drinking beer."
After reading from the report, defendant testified: "I did not have any beer.... That is not true. I did not have one sip of beer."
"Hearsay" is a statement other than one made by the declarant while testifying at the present trial or hearing offered into evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). According to La. C.E. art. 803(8)(b)(I), investigative police reports are inadmissible hearsay. However, if a reviewing court is able to determine beyond a reasonable doubt that the improperly admitted hearsay did not contribute to the verdict, then the error is harmless. State v. Banks, 439 So.2d 407, 409 (La. 1983).
In the present case, we find that the statement from the police report allegedly made by Eric Gates was hearsay, because it was offered to prove the truth of the matter asserted, i.e., that defendant had *654 been drinking beer with Gates at Jaeger's prior to the accident. However, we find the brief reference to Gates' alleged statement to the officer to be cumulative, and that it did not contribute to the verdict.
Officer DeJong and Trooper Sovinsky both testified unequivocally at trial that they smelled alcohol on defendant, that his speech was slurred, that he failed the alphabet test, that he had bloodshot eyes, and that they believed that he was under the influence of alcoholic beverages at the time of the accident. Further, both defendant and defendant's friend admitted at trial that defendant had been drinking that day. Based on the foregoing, we find that the erroneous admission of the hearsay testimony is harmless. See State v. Sigur, 578 So.2d 143 (La.App. 1 Cir.1990), writ denied, 582 So.2d 1303 (La.1991).
In his final assignment of error, defendant argues that the trial court erred by imposing an excessive and illegal sentence. Defendant did not orally object to the sentence below. He filed a written motion to reconsider sentence. However, it was untimely.[5] When a defendant fails to file a timely motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Sanders, 33,778 (La.App. 2 Cir.10/4/00), 769 So.2d 183, 188, citing State v. Mims, 619 So.2d 1059 (La.1993). Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. Id.
The law regarding excessive sentences is set forth in State v. Hester, 99-426 (La.App. 5 Cir.9/28/99), 746 So.2d 95, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342:
The Eighth Amendment to the United States Constitution and Article 1, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Even a sentence which falls within statutory limits may be excessive under certain circumstances. Once imposed, a sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits.
Id. at 103 (citations omitted).
In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Jackson, 597 So.2d 1188 (La.App. 5 Cir.1992). The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Daigle, 96-782 (La.App. 5 Cir.1/28/97), 688 So.2d 158, writ denied, 97-0597 (La.9/5/97), 700 So.2d 506. A sentence within statutory limits will not be set aside as excessive absent manifest abuse of discretion. State v. Slang, 94-332 (La. App. 5 Cir.11/16/94), 646 So.2d 1037, writ denied, 94-3063 (La.4/7/95), 652 So.2d 1344 (citation omitted).
Defendant was convicted of first degree vehicular negligent injuring, a violation of La. R.S. 14:39.2. The penalty provision of the statute is as follows:

*655 D. Whoever commits the crime of first degree vehicular negligent injuring shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than five years, or both.
The record reveals that prior to sentencing, the trial court considered defendant's age, family ties, letters from family and friends, the report from Family and Forensic Services, defendant's prior criminal record, the seriousness of the present offense, the injuries the victim suffered, defendant's drinking problem, and the sentences for similar crimes. The statute indicates that defendant could have been fined not more than $2,000.00 or imprisoned with or without hard labor for not more than five years, or both. In this case, defendant was fined $1,000.00 and sentenced to five years at hard labor, which was suspended with special conditions. Upon review, we do not find the sentence to be grossly disproportionate to the severity of the offense, nor does it impose the needless and purposeless imposition of pain and suffering. Further, the trial court's sentence is supported by the record. We find no abuse of discretion by the trial court in the length of defendant's sentence.
In addition to being excessive, defendant also argues that his sentence was illegal. He contends that the trial court erred by requiring him to pay twenty-five percent of his monthly take-home pay to the victim and by not setting a specific restitution amount as required by La. C.Cr.P. art. 895.1. Defendant claims that even if the court had set an amount of restitution, it could not have ordered defendant to continue paying money to the victim, since the victim has already settled a civil lawsuit against defendant.
La.C.Cr.P. art. 895.1 provides in pertinent part:
A. (1) When a court places the defendant on probation, it shall, as a condition of probation, order the payment of restitution in cases where the victim or his family has suffered any direct loss of actual cash, any monetary loss pursuant to damage to or loss of property, or medical expense. The court shall order restitution in a reasonable sum not to exceed the actual pecuniary loss to the victim in an amount certain. However, any additional or other damages sought by the victim and available under the law shall be pursued in an action separate from the establishment of the restitution order as a civil money judgment provided for in Subparagraph (2) of this Paragraph. The restitution payment shall be made, in discretion of the court, either in a lump sum or in monthly installments based on the earning capacity and assets of the defendant.
(2)(a) The order to pay restitution, as provided in this Article, is deemed a civil money judgment in favor of the person to whom restitution is owed, if the defendant is informed of his right to have a judicial determination of the amount and is provided with a hearing, waived a hearing, or stipulated to the amount of the restitution ordered. In addition to proceedings had by the court which orders the restitution, the judgment may be enforced in the same manner as a money judgment in a civil case. Likewise, the judgment may be filed as a lien as provided by law for judgment creditors. Prior to the enforcement of the restitution order, the defendant shall be notified of his right to have a judicial determination of the amount of restitution.
* * *
(5) The amount of any judgment by the court hereunder, shall be credited *656 against the amount of any subsequent civil judgment against the defendant and in favor of the victim or victims, which arises out of the same act or acts which are the subject of the criminal offense contemplated hereunder.
B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following:
* * *
(5) To the victim to compensate him for his loss and inconvenience. Such an amount may be in addition to any amounts ordered to be paid by the defendant under Paragraph A herein.
In the instant matter, the trial court instructed defendant to pay the victim twenty-five percent of his take-home pay for five years. As such, the trial court failed to set a specific amount to be paid in restitution. Therefore, the sentence as imposed is insufficient to fulfill the statutory requirement that the court set the amount of restitution. State v. Peters, 611 So.2d 191 (La.App. 5 Cir.1992). Accordingly, we vacate the sentence and remand for resentencing to afford the trial court the opportunity to consider the earning capacity and assets of defendant, and to set a determinate amount of restitution.
Finally, pursuant to La.C.Cr.P. art. 920, the record was reviewed for errors patent. The transcript shows that at the time of sentencing, the trial court failed to inform defendant of the prescriptive period for post-conviction relief, as is mandated by La.C.Cr.P. art. 930.8. Therefore, at the time of resentencing, we instruct the trial court to advise defendant of the provisions of La.C.Cr.P. art. 930.8.
Additionally, we note that at the time of sentencing, the trial court failed to specify the conditions of home incarceration, as required by La. C.C.P. art. 894.2. Therefore, at the time of resentencing, the trial court is instructed to specify the conditions of defendant's home incarceration.
For the foregoing reasons, defendant's conviction is hereby affirmed. Defendant's sentence is vacated and the matter is remanded to the trial court for resentencing in accordance with La.C.Cr.P. arts. 894.2, 895.1 and 930.8.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
NOTES
[1] The trial judge imposed the following special conditions of probation:

1) Defendant must spend six months of weekends in parish prison (suspended pending his appeal);
2) Defendant must pay restitution to the victim in the amount of twenty-five percent of his take-home pay for five years;
3) Defendant must not consume alcohol;
4) Defendant must surrender his drivers license to the State of Louisiana and refrain from driving for five years;
5) Defendant must be home incarcerated;
6) Defendant must give sixty lectures to public groups on his problems with alcohol;
7) Defendant must write and send one letter per month to the victim about what he is doing to curb alcohol abuse;
8) Defendant must pay a fine of $1,000.00 (suspended pending his appeal);
9) Defendant must attend and complete a substance abuse program which is to be approved by the probation department.
[2] It was later determined that defendant ran a red light at the intersection, slamming into Ms. Mansfield's car, and knocking it onto the median.
[3] DeJong explained that an alphabet test was a field sobriety test where the subject is advised to start and stop at a particular letter of the alphabet.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Defendant was sentenced on October 19, 1999, and filed a motion for reconsideration of sentence on December 6, 1999. La.C.Cr.P. art. 881.1 requires the motion to be filed within thirty days of sentencing unless the trial court sets a longer period, which did not occur in this case.