754 So.2d 382 (2000)
STATE of Louisiana, Appellee.
v.
Frank F. McDONALD, Appellant.
No. 33,013-KA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*383 Paula C. Marx, Louisiana Appellate Project, Counsel for Appellant.
*384 Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Joseph W. Greenwald, Jr. and Tommy J. Johnson Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, C.J., and KOSTELKA and DREW, JJ.
NORRIS, Chief Judge.
Frank McDonald was convicted of one count of DWI fourth offense, a violation of La. R.S. 14:98, and received a sentence of ten years at hard labor, without the benefit of probation, parole, or suspension of sentence and a $5,000.00 fine, with no default time being ordered. He appeals his conviction and sentence, which we affirm.

Facts
Officer Scott Mutter testified that on January 11, 1999, he was dispatched to a call and was told that a male, driving a light blue El Camino, was trying to run over a female in the 200 block of Olive Street. When Officer Mutter pulled up on the scene, an unidentified person in front of the Circle K store pointed out the location of the El Camino. Officer Mutter spotted the El Camino approximately 100 feet away heading south on Centenary and never took his eyes off it. Officer Mutter pursued the El Camino with his lights on, and caught up with the vehicle before he pulled onto Robinson. Officer Mutter then forced the El Camino to pull into a vacant lot at the corner of Centenary and Robinson.
When McDonald exited the El Camino, Officer Muller recognized him because of prior encounters. McDonald approached Officer Mutter's car and began to talk to him. Mutter detected a strong odor of alcoholic beverages on McDonald's breath so he got out of his car. Because he was acquainted with McDonald and was familiar with his tendency to drink and drive, Officer Mutter believed that McDonald was intoxicated. McDonald appeared upset and emotional, had slurred speech, was rambling while talking to Officer Mutter, and appeared unsteady.
Officer Mutter immediately called for the selective enforcement unit, Mirandized McDonald and informed him that he was under arrest for DWI. Then, without conducting any field sobriety tests, Officer Mutter transferred McDonald to the selective enforcement unit. When Officer Scott Dean, the Selective Enforcement officer, came into contact with McDonald he also smelled a strong odor of alcohol on his breath. After Officer Dean gave McDonald his Miranda warnings and asked him how much alcohol he had to drink that day, McDonald told him that he had two quarts of Old Milwaukee and four twelve-ounce beers.
McDonald was taken into the DWI testing room and given his rights relating to a chemical test. Then, Officer Dean attempted to administer the standard field sobriety tests; however, McDonald was only able to complete the ABC test due to his sprained ankle. Officer Dean tried to administer the Intoxilyzer test to McDonald but was unable to lock in a positive reading.
McDonald was issued a ticket for DWI 4th offense. When asked specifically if he thought McDonald was intoxicated, Officer Dean responded that in his professional opinion as a police officer and specifically as a DWI officer, McDonald was one of the most intoxicated persons with whom he had come into contact.
Mark Lioy, a friend of McDonald's, testified that he was driving the car that Officer Mutter stopped on January 11, 1999. He testified that he hung out with McDonald all day and then drove him to Olive Street to bring some things back to a girl named Carmen who was apparently "staying" on that street. Lioy stated that when they initially encountered Carmen, she and McDonald got into a fight and when she walked away, the two men drove down the street to the Circle K store where McDonald and Carmen got into a second fight. Lioy reported that after *385 Carmen busted the windshield on the El Camino, he and McDonald left the Circle K because someone there told them that the police were coming. Lioy stated that McDonald wanted to go back and talk to Carmen but he refused to return to the scene; instead, Lioy pulled the El Camino into a parking lot located at the corner of Centenary and Robinson and had a "spat" with McDonald. Lioy testified that he had to get out of the car through the passenger side door because the driver side door did not work; he then threw the keys at McDonald and left the scene on foot. Lioy testified that he never saw a police car or flashing lights.
During the trial lunch break, Jerri Bowen, an employee of the Caddo Parish Public Defender's Office and McDonald's attorney reenacted the stopping of the car. Bowen allowed counsel's car to get about 3-4 blocks ahead and then she began to follow. Bowen lost sight of the car after it crested the hill at Centenary and Boulevard Street; she testified that the corner of Centenary and Robinson is approximately 2-2½ blocks past the corner of Centenary and Boulevard. Bowen agreed that if she had been going faster than 35 mph or had been closer to the car, the outcome of the experiment would have been different.
Mark Masters, an employee of Louisiana Probation and Parole, received a letter from McDonald's mother, written by McDonald, which he read to the court. The details in the letter were essentially the same as Lioy's testimony, and included a promise to make "it worth it moneywise" for Lioy to testify that he was driving. McDonald included in the letter a diagram of how the cars were parked at the time of the stop.
McDonald was allowed to testify, despite the fact that the defense had already rested its case. He gave the same version of the facts that can be found in the letter he wrote to his mother. McDonald adamantly denied driving the car, sticking to the claim that it was Lioy who drove the car, pulled into the parking lot and walked off of the scene totally before the police ever showed up and arrested the defendant for DWI. He admitted to writing the letter and offering Mark Lioy money for his testimony but claims that what he wrote in the letter was the truth and that he wrote it at the direction of Peter Flowers who advised him to write everything down lest he forget anything before trial. He testified that he offered Lioy money because they were not the best of friends and he was afraid that Lioy would not testify at this trial if he did not offer him something of value in exchange for his testimony.
The trial judge found McDonald guilty of DWI, fourth offense. After the denial of his motion for post-verdict judgment of acquittal, McDonald was sentenced to ten years at hard labor, without the benefit of parole, probation or suspension of sentence and a five thousand dollar fine, without default time. McDonald appeals his conviction due to insufficiency of evidence and his sentence due to excessiveness.

Law and Analysis
When issues are raised on appeal concerning the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The sufficiency issue is reviewed first because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992).
The appellate court does not assess credibility or re-weigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, *386 if believed by the trier of fact, is sufficient to support the requisite factual finding. State v. Gradick, 29,231 (La.App.2d Cir.01/22/97), 687 So.2d 1071; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir. 1992).
DWI is "[t]he operating of any motor vehicle ... when ... [t]he operator is under the influence of alcoholic beverages or ... [t]he operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood ..." La. R.S. 14:98. For a DWI, fourth offense, the present DWI offense must be "a fourth or subsequent [DWI] offense." La. 14:98.
McDonald argues that it was not at all clear that he was intoxicated. He further argues that he was not driving the car at the time that the vehicle was stopped by Officer Mutter.
In order to convict an accused of driving while intoxicated, the prosecution need only prove that defendant was under the influence of alcohol or drugs. State v. Courtney, 30,629 (La.App.2d Cir.05/13/98), 714 So.2d 176; State v. Edwards, 591 So.2d 748 (La.App. 1st Cir.1991), writ denied, 94-0452 (La.06/21/96), 675 So.2d 1072. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. Id.; State v. Neilson, 27,239 (La.App.2d Cir.08/23/95), 660 So.2d 130; State v. Pitre, 532 So.2d 424 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (1989). It is not necessary that a conviction of DWI be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish defendant's guilt. Intoxication is an observable condition about which a witness may testify. Id.
Officer Mutter testified that when McDonald came over to his car after he pulled him over, his breath smelled strongly of alcoholic beverages. Officer Dean also testified that McDonald's breath had a strong odor of alcoholic beverages. According to Officer Dean, in his professional opinion as a police officer and as a DWI officer, McDonald was one of the most intoxicated people with whom he had to deal.
The trial judge found the testimony of the law enforcement officers regarding McDonald's intoxication to be credible. Additionally, the judge watched the video tape several times and likewise concluded that McDonald was intoxicated. The trial judge's decision to credit the officers' testimonies and not McDonald's was within his discretion.
Officer Mutter testified on numerous occasions that he saw no one else in the car when he pulled it over. The only testimony that McDonald was not driving came from Lioy and McDonald. Clearly, the letter that McDonald wrote could have reasonably been interpreted by the trial judge as a request to Lioy to testify falsely that he, not McDonald, had been driving in the car, and in exchange McDonald would make it worth his while "moneywise."
The trial judge found the testimony of Officer Mutter regarding the number of occupants in the car to be credible and McDonald's testimony that he wrote the letter to refresh memories for testimony not credible. The trial judge's decision to credit Officer Mutter's testimony and not McDonald's was within his discretion. There was sufficient evidence to support a conviction in this matter. This assignment is without merit.
McDonald next argues that the trial judge did not meet the requirements found in La.C.Cr.P. art. 894.1 when it sentenced him to the mandatory minimum sentence of ten years in this matter. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La. App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence *387 is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
The district judge found that McDonald had pled guilty to separate DWI fourth offense charges in Bossier and Caddo Parishes, for which he was on probation at the time of this offense. The ten year sentence at hard labor without benefit is therefore the mandatory minimum for this offense. La. R.S. 14:98 E(3)(d). In fact, McDonald has been arrested for DWI 13 times, has a felony drug offense involving Quaalude, has multiple DWI convictions, a conviction for unauthorized entry of an inhabited dwelling and issuance of worthless checks in a middle grade felony amount, possession of mariana, and while on probation for two separate DWI fourth convictions, there were additional allegations of misuse of the telephone and making harassing phone calls, as well as simple battery. In sum, McDonald has repeatedly driven while under the influence of alcohol, endangering his life and the lives of others. As such, despite spending time in jail and on probation for DWI, he has apparently not learned from his previous mistakes. Accordingly, this record clearly shows an adequate factual basis for imposing the mandatory minimum sentence of ten years without benefit of probation, parole, or suspension of sentence, and reflects that the trial judge adequately considered the guidelines of Art. 894.1. State v. Lanclos, supra; State v. Smith, supra; State v. Dunn, supra. This assignment of error lacks merit.

Conclusion
For the above reasons, McDonald's conviction and sentence are affirmed.
AFFIRMED.